# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GABRIEL JACKSON,** | : CIVIL ACTION NO. 1:20-CV-75 |
| **Plaintiff** | : |
| v. | : (Judge Conner) |
| **CORRECTIONAL OFFICER MEGAHAN**, *et al.*, | : |
| **Defendants** | : |

## **MEMORANDUM**

Plaintiff Gabriel Jackson ("Jackson"), an inmate housed at all relevant times at the State Correctional Institution, Smithfield, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 28). Named as defendants are Correctional Officers Megahan, Allazertner, Garman, Ruiz, Stambaugh, Wasko, and Williams; Lieutenants Moore, Morgan, and Rankin; Majors Sunderland and Grove, Sergeant Britton; Psychological Services Specialist Criste; Unit Manager Fisher, Superintendent Luther; Acting Superintendent Rivello; Deputy Superintendent Wakefield; and Secretary Wetzel (collectively, "defendants"), and Dr. Eugene Polmuller. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 31). Pursuant to Federal Rule of Civil Procedure

12(d), the court will treat the motion as one for summary judgment under Rule 56.¹ For the reasons set forth below, the court will grant the motion. The court will also dismiss the action against Dr. Polmuller pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

I. **Allegations of the Amended Complaint**

Jackson's amended complaint was signed and dated on May 25, 2020. (Doc. 28 at 12). Jackson asserts that he has been diagnosed with a serious mental disability and learning disability. (Id. ¶¶ 23, 25, 26). When Jackson is not compliant with his medication, he sees or hears things that are not there. (Id. ¶¶ 24, 26). Defendants allegedly imposed discipline on Jackson due to his mental illness by not opening his food slot ("wicket"). (Id. ¶ 30).

On January 10, 2020, at 6:30 a.m., defendant Megahan brought Jackson a food tray, but refused to open the slider until Jackson uncovered his camera. (Id. ¶¶ 31-32). One hour later, the food tray was retrieved from Jackson's wicket. (Id.) At the time, Jackson was in a psychiatric observation cell and alleges that he "did not have anything in his cell." (Id. ¶ 33). Later that day, at 11:00 a.m., defendants Stambaugh and Megahan brought Jackson a food tray, but refused to open the slider. (Id. ¶¶ 37-

---

¹ We issued an order on February 23, 2022, apprising the parties that the motion to dismiss would be treated as one for summary judgment. (Doc. 46). Because defendants raised the issue of exhaustion of administrative remedies, the court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), and Small v. Camden Cty., 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Docs. 38, 46).

38). Defendant Megahan again advised Jackson that he would not open the slider until Jackson uncovered his camera. (Id.) A few hours later, an unidentified sergeant opened Jackson's slider so he could access his food. (Id. ¶ 40).

The following day, Jackson received his food tray even though his camera was still covered. (Id. ¶ 39). On January 12, 2020, defendant Williams placed a food tray in Jackson's wicket and informed him that he would not open the slider until Jackson uncovered his camera. (Id. ¶¶ 41-42). On January 20, 2020, at 6:00 a.m., defendant Williams brought a food tray to Jackson, but refused to open the slider. (Id. ¶ 44).

On January 21, 2020, at 11:00 a.m., defendant Ruiz placed a food tray in Jackson's wicket, but refused to open the slider. (Id. ¶ 46).

Jackson then informed defendants Fisher and Morgan that he did not receive his food trays. (Id. ¶ 47). Defendant Morgan advised Jackson that the officers were following food distribution procedures when they refused to open the slider. (Id.) Jackson asserts that he was housed in the behavioral management unit for one year and was never informed that he must follow any feeding procedures. (Id. ¶ 48). He thus contends that defendants are lying about following prison procedure and, instead, engaged in retaliatory conduct by denying him access to food. (Id. ¶ 49).

Jackson further alleges that defendants denied him food from January 26 through January 30, and on February 1 and February 2. (Id. ¶ 53). He asserts that he informed defendants Luther, Rivello, Wakefield, Sunderland, Rankin, Garman,

Moore, Grove, Criste, and Polmuller about the denial of food trays. (Id. ¶¶ 55-57). Defendants allegedly refused to rectify the situation. (Id.)

Jackson asserts that the relevant inmate handbook provides that food shall not be used as a disciplinary measure. (Id. ¶ 59). As a result of the lack of food, Jackson allegedly suffered from weight loss, dizziness, chest pain, increased heart rate, trouble concentrating, suicidal thoughts, and emotional distress. (Id. ¶¶ 62-63, 108, 113-118).

On February 3, 2020, Jackson was transported to the medical department. (Id. ¶ 64). Jackson alleges that, while he was in the medical department, defendants Wasko, Megahan, and Williams confiscated his legal materials. (Id. ¶ 65). Jackson filed an inmate request to staff regarding his legal materials, but never received a response. (Id. ¶¶ 71-73).

On January 13, 2020, January 16, 2020, January 20, 2020, January 22, 2020, and January 24, 2020, Jackson filed grievances related to the denial of food. (Id. ¶ 123). The grievances were denied on February 6, 2020, February 21, 2020, and February 24, 2020. (Id.) Jackson alleges that he could not appeal the denial of these grievances because his legal materials were confiscated on February 3, 2020. (Id. ¶¶ 76, 124).

II.     **Statement of Undisputed Facts**[2]

On January 15, 2020, the court received Jackson's original complaint. (Doc. 47 ¶ 1). The underlying claims are that on two separate occasions between January 10, 2020 and January 12, 2020, Jackson was not provided a food tray unless he uncovered his cell camera. (Id. ¶ 6). Jackson identifies that he first filed a grievance on January 13, 2020 related to the denial of these meals. (Id. ¶ 7). In response to defendants' initial Rule 12(b) motion to dismiss, Jackson sought leave to amend and supplement his complaint. (Id. ¶ 2). The court granted Jackson's motion for leave to file an amended complaint. (Id. ¶ 3).

In his amended complaint, Jackson supplements the original complaint with allegations of events occurring between January 20, 2020 and February 3, 2020. (Id. ¶ 4). In addition, Jackson asserts that he was unable to appeal his initial grievance because certain defendants purportedly confiscated legal materials from his cell on

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from defendants' Rule 56.1 statement of material facts. (Doc. 47). Jackson did not file a response to defendants' statement of material facts. The court accordingly deems the facts set forth by defendants to be undisputed. See LOCAL RULE OF COURT 56.1; (see also Doc. 46 ¶ 3 (advising Jackson that failure to file a responsive statement of material facts would result in the facts set forth in defendants' statement of material facts being deemed admitted)).

February 3, 2020. (Id. ¶ 8). Jackson also states that he has been diagnosed with a serious mental disability. (Id. ¶ 5).

Jackson suggests that the alleged refusal by officers to provide him his food trays amounts to an incident of an urgent or emergency nature only requiring him to contact the nearest staff member, pursuant to prison policy. (Id. ¶ 9). Jackson claims he did so by contacting defendants Fisher and Morgan. (Id. ¶ 10). The amended complaint identifies that Jackson spoke with defendants Fisher and Morgan on January 21, 2020, about not receiving food. (Id. ¶ 11). Jackson acknowledges that the alleged conduct did not result in immediate harm. (Id. ¶ 12).

The Pennsylvania Department of Corrections' Inmate Grievance System permits any inmate an opportunity to seek review of problems that arise during the course of confinement. (Id. ¶ 13). The inmate grievance process consists of a three-part administrative process and an inmate must exhaust all three levels in order to fully exhaust an issue. (Id. ¶ 14). The officer tasked with initially responding to the grievance has ten working days to provide a written response to the grievant before the issue can be appealed through the other two stages of the process. (Id. ¶ 15).

Jackson's alleged inability to appeal his initial grievance occurred weeks after the filing of his initial lawsuit. (Id. ¶ 16).

DC-ADM 804 states that the Inmate Grievance System is not meant to address incidents of an urgent or emergency nature. (Id. ¶ 17). Prisoners dealing with an emergency, or an urgent situation, are not bound by the ordinary procedures specified in the grievance policy. (Id. ¶ 18). The Third Circuit has

6

stated that an emergency is "[a] sudden and serious event . . . that calls for immediate action" and "[a]n urgent need for relief or help." (Id. ¶ 19). Urgent means "calling for or demanding immediate attention." (Id. ¶ 20). "An emergency or an urgent issue is one that requires immediate attention." (Id. ¶ 21).

### III. Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

### IV. Discussion

Defendants contend that Jackson failed to fully exhaust any grievances in the prison's administrative review process prior to proceeding to federal court. (Doc. 32). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance

7

system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. Id. at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either

8

through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n.2 (outlining Pennsylvania's grievance review process).

On January 13, 2020, Jackson filed his first grievance related to the present claims. (Doc. 28 ¶¶ 123, 124). Jackson initiated the instant federal action on or about January 16, 2020 and submitted his amended complaint on May 25, 2020. (Docs. 1, 28). Jackson has not asserted that he exhausted his administrative

remedies before he filed the original complaint or the amended complaint. Instead, he argues that his failure to satisfy the PLRA's exhaustion requirement should be excused.

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. Booth v. Churner, 532 U.S. at 738 ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").[3] Jackson filed this federal lawsuit six days after the first alleged constitutional violation, and three days after he filed his first grievance.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. See, e.g., Camp, 219 F.3d at 281; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). This is not such a case. To the contrary, the record establishes that Jackson had full and ready access

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

10

to the administrative remedy process. In an attempt to justify his failure to exhaust, Jackson alleges that he was unable to appeal the denial of his grievances because certain defendants confiscated his legal materials. (Doc. 28 ¶ 124). He explains that the alleged confiscation of his legal materials occurred on February 3, 2020, twenty-one days *after* he filed the original complaint. (Id. ¶¶ 64-65). Thus, it is clear that Jackson did not even attempt to exhaust his administrative remedies before initiating the instant action. Indeed, "[a] prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies after initiating suit in federal court." Jenkins v. Dancha, 723 F. App'x 174, 175 (3d Cir. 2018) (nonprecedential); see also Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) (holding that substantial compliance with the exhaustion requirement does not extend to the filing of a suit before administrative exhaustion and that the inmate "cannot cure the defect in his action by the proffered amendment of the complaint"); Ryder v. Bartholomew, 715 F. App'x 144, 149 (3d Cir. 2017) (nonprecedential) (an inmate cannot "seek to cure non-compliance with § 1997e(a) by filing an amended complaint").

Jackson further contends that due to the urgent nature of his claim, complying with the grievance procedure was not required. (Doc. 35 at 2). DC-ADM 804, Section 1(A)(2) states, in part, as follows:

> The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate. It is not meant to address incidents of an urgent or emergency nature including allegations of sexual assault. . . When faced with an incident of an urgent or emergency nature, the inmate shall contact the nearest staff member for immediate assistance.

11

DC-ADM 804, Section 1(A)(2).

The Third Circuit Court of Appeals examined this policy and defined "incidents of an urgent or emergency nature" as "one that requires immediate attention." Downey v. Pa. Dep't of Corr., 968 F.3d 299, 306 (3d Cir. 2020). In Downey, the Third Circuit determined that because of the prisoner's severe medical condition requiring immediate care, he was only required to "contact the nearest staff member for immediate assistance" and he did not need to submit a grievance. Id. at 307. "The grievance procedures are clear. Individuals dealing with urgent situations are not required to file a grievance." Id. Thus, prisoners who suffer from conditions that require immediate attention are "exempt from the typical grievance steps." Id.

Here, Jackson alleges that he was denied meal trays on January 10, 2020, January 12, 2020, January 26, 2020 through January 30, 2020, February 1, 2020, and February 2, 2020. He asserts that he spoke to a staff member about a missing meal tray on January 10, 2020. (Doc. 44-1 at 5; Doc. 44-2 at 12). Pursuant to prison policy, "[a]ll inmates are required to turn on their light and move to the rear of the cell with his palms visible before receiving and when returning their tray." (Doc. 44-2 at 23). The record reflects that Jackson did not comply with this feeding procedure and, therefore, his slider was not opened in accordance with policy. (Id. at 6-24). Additionally, the record reflects that Jackson violated prison policy by covering his cell cameras. (Id. at 15-17). The denial of food trays for a limited period of time, based on Jackson's failure to follow feeding procedures, does not rise to the level of

12

a constitutional violation.  See Mammana v. Fed. BOP, 934 F.3d 368 (3d Cir. 2019) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim); see also Adderly v. Ferrier, 419 F. App'x 135, 141 (3d Cir. 2011) (nonprecedential) (denial of breakfast and lunch for seven days did not amount to deliberate indifference when inmate refused to eat some meals and was denied other meals for failing to follow proper feeding procedures).  Therefore, Jackson's situation cannot be considered urgent in nature and he has not demonstrated that his failure to fully pursue administrative relief should be excused.

The record establishes that Jackson did not fully exhaust the available administrative remedies prior to initiating this action.  Jackson bypassed the administrative review system by filing this action within days of his alleged constitutional mistreatment, far too brief of a time for Jackson to have exhausted his administrative remedies with respect to any grievances he might have submitted to prison officials.  Thus, Jackson's claims are barred on administrative exhaustion grounds and defendants' motion will be granted.

## V.     Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Dr. Polmuller was named as a defendant in the amended complaint and, to date, has not been properly served in this case. The court must engage in a two-step process in determining whether to dismiss the non-served defendant or grant Jackson additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." Id. Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. Id.

In the present matter, Jackson fails to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the court notified Jackson that the action against Dr. Polmuller was subject to dismissal and directed him to show cause why the action against this defendant should not be dismissed pursuant to Rule 4(m). (Doc. 37). Jackson failed to respond to the show cause order and, in general, his *pro se* status is not good cause to excuse his failure to timely

serve this defendant. Veal v. United States, 84 F. App'x 253, 256 (3d Cir. 2004) (nonprecedential). Based upon the lack of *any* explanation for his failure to adhere to the requirements of Rule 4, the court finds that Jackson failed to establish good cause.

If a plaintiff cannot demonstrate good cause for his failure to serve a defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. Petrucelli, 46 F.3d at 1305; see also FED. R. CIV. P. 4(m). It is Jackson's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (See Doc. 12 ¶ 7) (advising Jackson that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)). In light of Jackson's lack of good faith effort to properly serve Dr. Polmuller despite this court's warning of the possible consequences, including dismissal, the court concludes that dismissal is appropriate under the present circumstances. Accordingly, this non-served defendant will be dismissed from this action.

**VI**.     **Conclusion**

We will grant defendants' motion (Doc. 31) and enter judgment in their favor. We will also dismiss the action against Dr. Polmuller pursuant to Federal Rule of Civil Procedure 4(m).  An appropriate order shall issue.

<div style="text-align:right">

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

</div>

Dated:     March 25, 2022